# 98 DTA 227

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI,**
**CAGUAS, HUMACAO Y GUAYAMA**

FARMACIAS PABON, RINA, DERKES, MARIA,
GUADALUPE, MIRMAR, HOSPITAL SANTA ROSA
Recurrentes-Opositores Todos

v.

DEPARTAMENTO DE SALUD, FARMACIA GUAYAMA
Recurridos-Proponente la Segunda

FARMACIAS EL AMAL, FARMACIAS MARIA, RINA,
MIRMAR, GUADALUPE, DERKES, PABON Y HOSPITAL SANTA ROSA
Recurrente la Primera-Opositoras Todas

v.

DEPARTAMENTO DE SALUD, FARMACIA GUAYAMA
Recurridos Proponente la Segunda

Núms. KLRA-96-00344 /KLRA-96-00350

San Juan, Puerto Rico, a 24 de agosto de 1998

Panel integrado por su Presidente, Juez González Román
y los Jueces González Rivera y Ortiz Carrión

Ortiz Carrión, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Farmacias El Amal y un grupo de farmacias establecidas en el Municipio de Guayama incoaron sendos recursos para solicitar la revisión de una resolución emitida por la Secretaria de Salud de Puerto Rico otorgándole un certificado de necesidad y conveniencia al Dr. Lionel Lugo Rodríguez para establecer la Farmacia Guayama en el área dentro del radio de una milla del lugar donde ellos están localizados. En ambos recursos se plantea que la Secretaria de Salud erró al conceder el certificado de necesidad y conveniencia, al interpretar el Reglamento Núm. 56 del Departamento de Salud de manera arbitraria, y al descartar evidencia sustancial que demuestra que la farmacia propuesta no cumple con los requisitos establecidos en dicho reglamento. Por tratar sobre el mismo asunto, ambos recursos fueron consolidados.

Ante tales planteamientos, este Tribunal examinó las determinaciones de hecho y las conclusiones de derecho de la resolución recurrida a la luz de las leyes y reglamentos aplicables, las decisiones anteriores emitidas por el Departamento de Salud en casos similares, y la evidencia documental incluida en los apéndices sometidos por las partes. ▪ Antes de dilucidar los planteamientos hechos por los recurrentes, procede hacer una breve relación de los procedimientos administrativos y de la prueba presentada ante el Departamento de Salud que fue incluida por las partes en los apéndices de sus escritos ante este Tribunal.

El Dr. Lionel Lugo Rodríguez solicitó un certificado de necesidad y conveniencia para establecer la Farmacia Guayama en un predio de terreno que colinda con la Carretera PR-54 en el Municipio de Guayama. A esta solicitud se le asignó el numero 96-01-060. El 22 de agosto de 1996 se celebró una vista ante un oficial examinador del Departamento de Salud. Como opositores comparecieron las farmacias El Amal, Mirmar, Rina, Guadalupe, María, Derkes, Pabón y el Hospital Santa Rosa de Guayama. Para sustentar la propuesta de Farmacia Guayama testificaron: el Dr. Lionel Lugo Rodríguez, parte proponente, y el señor Vicente Feliciano, en calidad de perito economista. Para sustentar la oposición presentada por las Farmacias Derkes, María, Guadalupe, Mirmar y Rina declararon: el señor Enrique Sued, el señor Ariel Miranda, y la señora Lilliam Pérez. Para sustentar la oposición presentada por Farmacias El Amal declararon: el señor Leroy López, en calidad de perito economista, y la señora María T. Brugueras, farmacéutica de Farmacias El Amal. Además se presentó evidencia documental, copia de la cual se incluyó en los apéndices de los escritos presentados ante este Tribunal.

El oficial examinador rindió su informe, y el 29 de agosto de 1996 la Secretaria de Salud dictó la resolución cuya revisión se solicita en la que adoptó las recomendaciones del oficial examinador, y otorgó el certificado de necesidad y conveniencia solicitado por el Dr. Lugo Rodríguez para establecer la Farmacia Guayama, basándose en las siguientes determinaciones de hecho: la farmacia propuesta se establecería en un predio ubicado en la Carretera PR-54; cerca de las oficinas del Fondo del Seguro del Estado y establecimientos tales como Burger King, Pollo Tropical, McDonalds, y de un predio de veinticinco cuerdas propiedad de la Universidad Católica; la farmacia tendría un horario de 7:00 A.M. a 9:30 P.M., con planes de operar las veinticuatro horas del día; tendría veinticinco espacios de estacionamiento, servicio de telerecetas, equipo para impedidos, servi-carro, rampa para impedidos y un amplio inventario de medicamentos tanto genéricos como bioequivalentes; contaría con una farmacéutica regente y seis empleados; aceptaría todos los planes médicos incluyendo la tarjeta de salud del gobierno, las distintas tarjetas de crédito, ATH, y le concedería crédito a los clientes que cualifiquen; las farmacias existentes no ofrecen la totalidad de los servicios propuestos. Además determinó que la Carretera PR-54 es el eje de la transportación en el área de Guayama; la Carretera PR-3 sufre una gran congestión vehicular y la Carretera PR-54 permite que el movimiento vehicular no tenga que pasar por el centro del pueblo; la Carretera PR-54 constituye una barrera física que bifurca el área del centro del pueblo y el área de nuevo crecimiento y expansión urbana al sur del pueblo; el área de servicio primario de la farmacia propuesta consiste de dos factores: la población residente en el área al sur de la Carretera PR-54 y el pueblo de Guayama y la población flotante que

transita por ese sector de la Carretera PR-54; la mayoría de las farmacias ubicadas en el área dentro del radio de una milla de la farmacia propuesta están establecidas al norte de la Carretera PR-54 hacia el centro del pueblo; la Carretera constituye una barrera física que tiene el efecto de delimitar el área al sur de esa carretera, como un mercado distinto y separado del mercado existente en el área del centro del pueblo; la única otra farmacia autorizada a operar en el área al sur de la Carretera PR-54 es la Farmacia Santa Ana II; la configuración de la Carretera PR-54 propicia que el movimiento vehicular que transita por ella se dirija hacia el área sur del pueblo; según el censo del año 1990 proyectado al año 1996, la población residente del área al sur de la carretera PR-54 es de 12,652 habitantes, y la población flotante de esa área es de 23,251 pasajeros, para una población total de 35,903 personas. De tal modo, en el área al sur de la Carretera PR-54 existe una demanda de 2.9 farmacias a base de un criterio de población de 8,000 habitantes por farmacia y de 5.8 farmacias a base de un criterio de 4,000 habitantes por farmacia, si se considera el cambio en el concepto de indigencia que trajo la reforma de salud. Por último se determinó que las demás farmacias que operan en el área dentro del radio de una milla del lugar donde esta localizada la farmacia propuesta procesan más de 2,000 recetas mensuales, excepto la Farmacia María, que tiene un inventario limitado.

Basándose en estas determinaciones, la resolución cuya revisión se solicita concluye que la farmacia propuesta cumple con todos los requisitos establecidos por la Ley de Certificados de Necesidad y Conveniencia, Núm. 2 del 7 de noviembre de 1975, según enmendada, 24 L.P.R.A. sec. 334 y ss., y el Reglamento Núm. 56 del Departamento de Salud, por lo que se concedió el certificado de necesidad y conveniencia solicitado. ■

La Ley de Certificados de Necesidad y Conveniencia se aprobó con el propósito de promover la planificación ordenada de las facilidades y servicios de salud y para evitar los desajustes que el establecimiento desordenado de tales facilidades podría causarle a los servicios de salud que se ofrecen en el país. Con ese fin la Ley establece un sistema mediante el cual, antes de que se pueda operar una facilidad de salud en Puerto Rico, el Departamento de Salud tiene que certificar que tal facilidad es necesaria para la población que se va a servir, que no afectará indebidamente los servicios existentes, y que contribuirá al desarrollo ordenado y adecuado de los servicios de salud, 24 L.P.R.A. sec. 334(e). Asimismo, el Artículo 3 de la Ley según enmendada, 24 L.P.R.A. sec. 334(b), establece que el Secretario de Salud deberá adoptar un reglamento en el que se establezcan criterios para expedir o denegar estos certificados, disponiéndose que tales criterios deberán ser consistentes con las estrategias de desarrollo adoptadas por la Junta de Planificación y las siguientes guías generales:

":1. La relación entre la transacción para la cual se solicita el certificado y el plan de desarrollo de servicios a largo plazo, si alguno, del solicitante.

2. La necesidad actual y proyectada que tiene la población a ser afectada por la transacción contemplada de los servicios que se proveen mediante la misma.

3. La existencia de alternativas a la transacción para la cual se solicita el certificado o la posibilidad de proveer los servicios contemplados de manera más eficiente o menos costosa que la propuesta por el solicitante.

4. La relación entre el sistema de salud operante en el área y la transacción propuesta.

5. En el caso específico de solicitantes de certificados de necesidad y conveniencia para el ofrecimiento de servicios de salud, el Secretario deberá considerar también los siguientes factores:

"a) La disponibilidad de recursos humanos y económicos para el rendimiento eficiente de esos servicios.

b) El impacto que la forma de proveer los servicios tendrá sobre las necesidades de entrenamiento clínico que puedan tener los profesionales de salud del área en donde los servicios habrán de prestarse.

c) El porciento de la población del área a ser servida que tendrá acceso a los servicios propuestos. El Secretario deberá exigir que la solicitud indique el tiempo que el solicitante necesitará para hacer

*disponible el servicio o equipo objeto de la petición o realizar el gasto objeto de la transacción."*

En cumplimiento con este mandato legislativo, el Departamento de Salud adoptó el Reglamento Núm. 56 del 15 de agosto de 1986. ■ El Artículo VI (13) del Reglamento Núm. 56 define lo que constituye una farmacia y establece una serie de criterios que califica como específicos para la evaluación de su necesidad y conveniencia, los cuales tienen el efecto de limitar la discreción que le confieren las guías que establece la ley. Con este fin el Artículo XIII establece lo siguiente:

*"(13) Farmacias - Establecimiento registrado y autorizado por el Secretario de Salud en el cual se preparen, preserven, vendan y envasen productos quirúrgicos, drogas, productos farmacéuticos, especialidades farmacéuticas o de propiedad, recetas, medicinas y venenos al por menor, pudiendo además, traficar con otros artículos de lícito comercio que según la costumbre se vendan en las farmacias de Puerto Rico.*

*1. Se establece una norma de una fanmacia por cada 4,000 habitantes no indigentes para todos los municipios, excepto San Juan, para el cual la norma será de 3,000 habitantes no indigentes. La relación de población por farmacia se determinará la en base a la Categoría a la cual pertenezca el municipio.*

*Categoría I - 9,000 habitantes por farmacia*

*Categoría II - 8,000 habitantes por farmacia*

*Categoría III - 6,500 habitantes por farmacia*

*San Juan - 4,000 habitantes por farmacia.*

*2. La ubicación se evaluará a base de la necesidad del área de servicios, la cual se compondrá del área localizada dentro del radio de una (1) milla de la farmacia propuesta. Se considerará saturada un área de servicios si se sobrepasa del criterio de población aplicable. Disponiéndose, que no se negara el certificado por la saturación de otras áreas de servicio del mismo municipio. Entre los factores que se considerarán está la densidad poblacional del área, la población flotante, si alguna, y las vías de acceso para llegar a la facilidad propuesta.*

*3. No se podrá autorizar el establecimiento de nuevas farmacias en un área hasta tanto las farmacias existentes a una (1) milla a la redonda sobrepasen un promedio de dos mil (2,000) recetas por farmacia por mes, excluyendo las farmacias en instituciones gubernamentales. Se podrá tomar en cuenta el horario de servicios y los planes médicos a que se acogen las farmacias establecidas."* ■

### III
La revisión judicial de las decisiones administrativas tiene el propósito de asegurar que las agencias ejerzan su autoridad y discreción de conformidad con la ley y los reglamentos aplicables. Por esa razón, aun cuando las conclusiones de derecho emitidas por las agencias administrativas merecen gran deferencia de parte de los tribunales, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, Núm. 170 del 12 de agosto de 1988, 3 L.P.R.A. sec. 2175, establece que las conclusiones de derecho de la agencia pueden ser revisadas en todos sus aspectos por el tribunal revisor.

Está claramente establecido que cualquier decisión administrativa que esté fuera del marco de autoridad y discreción conferida por la ley y los reglamentos aplicables es inválida, y por consiguiente está sujeta a revisión judicial para rectificación. En tales casos, no hay razón para que la función revisora de los tribunales esté limitada por los principios que enmarcan la deferencia judicial hacia las determinaciones administrativas. Tal deferencia sólo procede cuando los organismos administrativos actúan dentro del marco de autoridad y discreción que les confiere la ley y los reglamentos aplicables y no actúan arbitrariamente. *Murphy Bernabé v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975). Para un resumen sobre esta doctrina véase la opinión de la pluralidad de jueces del Tribunal Supremo de Puerto Rico emitida en *Misión Industrial v. Junta de Planificación*, **98 J.T.S. 79.** De tal modo, las agencias administrativas pueden interpretar las normas establecidas por sus reglamentos en los procesos adjudicativos a la luz de los hechos específicos de cada caso. Sin embargo, en tales procesos

las agencias no pueden formular normas que no estén basadas en el texto del reglamento que les corresponde aplicar. De lo contrario, la agencia estaría enmendando el reglamento mediante el proceso adjudicativo, y la Ley de Procedimiento Administrativo Uniforme no le confiere tal autoridad. Siempre que una agencia pretenda enmendar un reglamento tiene que seguir el procedimiento cuasi legislativo de reglamentación establecido en las Secciones 2.1 a 2.13 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. secs. 2121 a 2133.

El Reglamento Núm. 56 establece que el Secretario de Salud debe evaluar las solicitudes para establecer farmacias a base de la necesidad del área de servicio en la cual se propone ubicar, y define el área de servicio como el territorio localizado dentro del radio de una milla de la farmacia propuesta. Un área de servicio se considerará saturada si el número de habitantes en ese territorio se sobrepasa del criterio de población aplicable. ■ Al evaluar la necesidad y conveniencia de la farmacia propuesta, la Secretaria de Salud tenía que adherirse a los criterios específicos que se establecen en el Reglamento Núm. 56. La tesis de dos áreas de servicio distintas dentro del área comprendida en el radio de una milla del lugar donde está ubicada la farmacia propuesta, creadas por una barrera física constituida por la Carretera PR-54, aunque puede ser razonable, no es un criterio establecido por la Ley de Certificados de Necesidad y Conveniencia o el Reglamento Núm. 56 del Departamento de Salud. Cuando la ley o reglamentación es clara, su letra no puede menospreciarse bajo el pretexto de cumplir su espíritu. De la prueba documental presentada ante el Departamento de Salud surge que en el área comprendida dentro del radio de una milla del lugar donde está localizada la farmacia propuesta ubican otras diez farmacias. ■ Para decidir si la farmacia propuesta cumple con el requisito específico de población a tenor con lo dispuesto por el Reglamento Núm. 56, la Secretaria de Salud tenía la obligación de contabilizar el número total de farmacias que operan dentro del área de servicio de la farmacia propuesta. Una vez un organismo administrativo ha promulgado un reglamento para facilitar su proceso decisional y limitar el alcance de su discreción, está obligado a observarlo estrictamente. *García Troncoso v. Administración del Derecho al Trabajo,* 108 D.P.R. 53 (1978). La Secretaria de Salud no tiene discreción para actuar de manera inconsistente con los criterios específicos establecidos por el Reglamento Núm. 56, de lo contrario estaría actuando arbitrariamente. El ejercicio de la discreción administrativa a base de criterios adoptados caso por caso, y no a base de criterios establecidos por la reglamentación vigente, adolece del defecto constitucional de ambiguedad. *Soto v. Secretario de Justicia,* 112 D.P.R. 477, 499 (1982). Del expediente del caso ante este Tribunal no surge que exista prueba demostrativa de que en el área localizada dentro del radio de una milla del lugar donde está localizada la farmacia propuesta, exista una población residente y flotante que justifique el establecimiento de una farmacia adicional a base del criterio de farmacia por habitantes que establece el Reglamento Núm. 56 del Departamento de Salud.

Por las consideraciones anteriormente expuestas, se expide el auto de revisión solicitado, se deja sin efecto el certificado de necesidad y conveniencia otorgado a la Farmacia Guayama, y se devuelve el caso al Departamento de Salud para que se celebre una nueva vista en la que se evalúe nuevamente la necesidad y conveniencia de la Farmacia Guayama observándose rigurosamente los criterios establecidos en la Ley de Certificados de Necesidad y Conveniencia y la reglamentación aplicable.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 98 DTA 227**

**1.** El Departamento de Salud no publica sus decisiones de manera sistemática, sin embargo, este Tribunal toma conocimiento judicial de las siguientes resoluciones del Secretario de Salud y los respectivos informes preparados por los oficiales examinadores en otros casos sobre solicitudes de certificados de necesidad y conveniencia, copia de las cuales fueron incluidas en los apéndices de los escritos presentados por las partes. Entre ellas, la resolución del 25 de marzo de 1992 en la cual se le denegó un certificado de necesidad y conveniencia a la Farmacia Plaza Guayama, Propuesta Núm. 90-01-117 (Ap. p. 217-227); la resolución del 24 de febrero de 1995 en la cual se le denegó un certificado de necesidad y conveniencia a la Farmacia K-Mart, Propuesta Núm. 92-01-068 (Ap. p. 229- 241); la resolución del 12 de septiembre de 1995 en la cual la Secretaria de Salud no acogió el informe preparado por el oficial examinador, y le otorgó un certificado de necesidad y conveniencia a la Farmacia Santa Ana II, Propuesta Núm. 94-01-086 (Ap. p. 243-249).

**2.** Consideramos apropiado observar que el Artículo XIII del Reglamento Núm. 56 establece que emitido un certificado de necesidad y conveniencia, el mismo no advendrá efectivo hasta que transcurra el término para solicitar la reconsideración de la decisión del Secretario y el término para solicitar la revisión judicial de ésta sin que así se haya hecho, y en caso de que se recurra, hasta que se haya resuelto el recurso en forma definitiva y firme. El Artículo XIII del Reglamento Núm. 56 establece además que el Secretario podrá decretar que un certificado de necesidad y conveniencia sea efectivo de inmediato, pero en tal caso deberá exponer las razones en que funda tal decisión. En el caso del título la Secretaria de Salud expidió el certificado de necesidad y conveniencia Num. 96-172 el 29 de agosto de 1996, confiriendole efectividad inmediata, antes de que transcurrieran los términos dispuestos por el Reglamento Núm. 56 sin exponer razón alguna para ello, como lo requiere el Artículo XIII del Reglamento Núm. 56.

**3.** El Departamento de Salud adoptó el Reglamento Núm. 89 de 30 de octubre de 1997 en el que se deja sin efecto el Reglameneto 56; sin embargo, al momento en que la Secretaria de Salud emitió la resolución cuya revisión se solicita, aún estaba vigente el Reglamento 56, y sus disposiciones rigen la controversia que se plantea en el caso del título.

**4.** De acuerdo a los criterios establecidos por el propio Artículo VI del Reglamento Núm. 56, el Municipio de Guayama está clasificado en la Categoría II y así se determina en la resolución cuya revisión se solicita.

**5.** Conforme al Reglamento Núm. 56, el criterio de población aplicable para el área de la farmacia propuesta es de 8,000 habitantes por farmacia.

**6.** Las farmacias que ubican dentro del área de una milla radial de la farmacia propuesta son: Farmacia María, Farmacia Guadalupet Farmacia El Amal, Farmacia Mirmar, Farmacia Derkes, Farmacia Rina, Farmacia Pabón, Farmacia Myrna, Farmacia San Carlos, y Farmacia Santa Ana II, la cual para la fecha de los hechos se le había otorgado el certificado de necesidad y conveniencia, más aún no había comenzado sus operaciones.